(91 Misc. Rep. 236)

AMERICAN METAL CEILING CO., Inc., v. NEW HYDE PARK FIRE DIST. et al.

(Nassau County Court. June 25, 1915.)

1. MUNICIPAL CORPORATIONS ⬳887—"FUNDED DEBT"—DIVERSION.

A fire district, which raised by sale of bonds a specified sum for specified purposes, thereby created a funded debt within general Municipal Law (Consol. Laws, c. 24) § 6, declaring that a funded debt shall not be contracted except for a specific object, and that a diversion of the proceeds to any other purpose is illegal.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1869; Dec. Dig. ⬳887.

For other definitions, see Words and Phrases, First and Second Series, Funded Debt.]

2. MUNICIPAL CORPORATIONS ⬳892—APPROPRIATION OF FUNDS FOR SPECIFIC PURPOSES—DIVERSION—EFFECT.

Money raised and appropriated by a municipal corporation for a specific purpose is deemed as in the treasury applicable to the payment of the debt incurred, though the money has been diverted to other purposes.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1874, 1875; Dec. Dig. ⬳892.]

---

3. PRINCIPAL AND SURETY ☞100—DISCHARGE OF SURETY—CHANGE IN CONTRACT.

A material change in a building contract as to payments to be made thereunder, made after the signing of the contract and the execution of a bond to secure performance thereof, discharges the surety from liability.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 162–165; Dec. Dig. ☞100.]

4. MUNICIPAL CORPORATIONS ☞366—ERECTION OF BUILDINGS—RIGHTS OF PARTIES.

Where a contractor with a fire district to construct a fire house abandoned the work before completing it, the fire commissioners could contract for the completion of the work and impliedly obligate the district to the extent of any sum remaining in their hands above the amount necessary to pay for specific work for which an appropriation was made.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 899; Dec. Dig. ☞366.]

5. MUNICIPAL CORPORATIONS ☞373—PUBLIC WORK—ENFORCEMENT OF LIENS.

Where a contractor with a fire district to construct a fire house had been paid, at the time he abandoned the contract before completing the work, all that he was entitled to receive up to that time, a materialman and laborer could not enforce their liens as mechanic's liens.

[Ed. Note.—For other· cases, see Municipal Corporations, Cent. Dig. § 913; Dec. Dig. ☞373.]

6. MUNICIPAL CORPORATIONS ☞373—PUBLIC WORK—REMEDY OF SUBCONTRACTOR.

Where a contractor with a fire district for a fire house had been paid, at the time he abandoned the work, all that he was entitled to receive, materialmen and laborers were entitled to a personal judgment against him for the amount of their claims.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 913; Dec. Dig. ☞373.]

7. MUNICIPAL CORPORATIONS ☞376—PUBLIC WORK—ABANDONMENT BY CONTRACTOR—REMEDY OF PERSON COMPLETING WORK.

Where a contractor with a fire district for a fire house abandoned the work before completion, and the fire commissioners contracted with a third person to finish the work, the third person was not entitled to any personal judgment against the contractor for the balance due him on his lien for finishing the work, and, where the funds in the hands of the treasurer were exhausted, there could be no personal judgment against the district or the fire commissioners as such.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 911–913; Dec. Dig. ☞376.]

Action by the American Metal Ceiling Company against the New Hyde Park Fire District, a municipal corporation, and others. Judgment ordered.

Maxson & Jones, of Hempstead (Henry L. Maxson, of Hempstead, of counsel), for plaintiff.

Neil H. Vandewater, of Mineola, for defendants New Hyde Park Fire Dist. and others.

Lincoln B. Haskin, of Hempstead, for defendant Nassau Lumber Co.

George B. Stoddart, of Mineola, for defendant George E. Christ.

NIEMANN, J. The liens are five in number, as follows: The American Metal Ceiling Company for $730, for metal work, filed Au-

gust 11, 1914; Nassau Lumber Company for $1,349.32, for lumber for the erection of the fire house, filed September 3, 1914; George E. Christ for $810, for plumbing and heating, filed September 30, 1914; George E. Christ for $272, for the erection of a slag roof, leaders, and trimming, filed September 30, 1915; George E. Christ for $1,069.40, for labor, cement, hardware, and necessary material to complete the building, filed September 30, 1914.

The New Hyde Park fire district by a vote of the people authorized expenditure of $5,000 for the erection of a fire house, and on the 16th day of December, 1913, the said fire commissioners issued bonds of said district and raised the said sum of $5,000. On the 25th day of May, 1914, the board of fire commissioners of said district entered into a written contract with one J. E. Heidtmann for the construction of a fire house in accordance with certain plans and specifications to erect the building at a cost of $4,994. This contract was made by Jesse H. Heidtmann in the name of John E. Heidtmann, and the court decided upon the trial that the use of the name of John E. Heidtmann by the said Jesse H. Heidtmann was unauthorized, and that the said Jesse H. Heidtmann was the real contractor. On June 30, 1914, the electors of said district passed the further resolution authorizing the appropriation of $2,000 for the purpose of installing the necessary plumbing, metal work, and heating in said fire house, and in pursuance to this resolution the said fire commissioners issued and sold bonds for said sum. On the 23d day of July, 1914, a second contract was made between the said fire commissioners and the said Heidtmann for the installation of plumbing, metal work, and heating apparatus in said fire house for the sum of $1,714. The terms of this second contract were written as an addendum on the original contract and signed by the same parties. The contractor entered upon the performance of the first contract, but the 11th day of August, 1914, abandoned the work and left for parts unknown. After the contractor abandoned his contract, the defendant George E. Christ entered upon the premises with the consent of the said fire commissioners and completed the building, for which he filed his lien for $1,069.40. He also put the plumbing and heating plant into the building, for which he filed his lien for $810, and the plaintiff American Metal Ceiling Company, Incorporated, put in the metal work, for which they have filed their lien for $730. The defendant Nassau Lumber Company furnished lumber for the erection of the building under the first contract, and they filed their lien for $1,349.32 for such lumber.

It was stipulated in open court upon the trial by all the parties that the several liens filed herein were in proper and legal form, so that I will not consider any objection now made to the validity of any of said liens. It was also agreed upon the trial that the fund now in the hands of the fire commissioners is $1,994. This sum is the net proceeds of the sale of the bonds authorized by the second resolution appropriating $2,000 for the specific purpose of installing necessary plumbing, metal work, and heating in said fire house. The fund of $2,000 must be applied in payment of the contract balance of the plumbing, metal work, and heating, and cannot be diverted to or used for any other purpose.

[1] It is provided by section 6 of the General Municipal Law (Birdseye, Cuming & Gilbert's Cons. Laws of New York, Laws of 1909) as follows:

"Funded debt shall not be contracted by a municipal corporation, except for a specific object, expressly stated in the ordinance or resolution, proposing it. * * *"

The fire district by this second resolution raised $2,000 for the specific object or purpose of installing the necessary plumbing, metal work, and heating in said fire house. A funded debt was thereby created within the meaning of the above section, and to divert the proceeds of the sale of the bonds for any other purpose would be illegal and unauthorized. This fund can be expended only for the specific object specified in the resolution. Swift v. Mayor of City of New York, 83 N. Y. 528; People ex rel. Rohr v. Owens, as Treasurer of Village of Ossining, 110 App. Div. 30, 96 N. Y. Supp. 1054; Davidson v. Village of White Plains, 121 App. Div. 287, 105 N. Y. Supp. 803.

[2] It is well settled that the money raised and appropriated by a municipal corporation for a specific purpose is regarded as being still in the treasury applicable to the payment of the debt incurred for the purpose for which the fund was appropriated, and this is so even if the money has been diverted to other purposes. People v. Owens, 110 App. Div. 30, 96 N. Y. Supp. 1054; Palmer v. City of Brooklyn, 11 Misc. Rep. 459, 32 N. Y. Supp. 739; People ex rel. Darmat v. Comptroller of State of New York, 77 N. Y. 45.

In the case of Swift v. Mayor, supra, the court, speaking of an appropriation for removing garbage from the streets, said (83 N. Y. 536):

"As before shown, the only remedy of the plaintiff was to follow this fund, and the law impressed upon it a trust for the payment of his claim out of it. It was raised for the express purpose of paying obligations incurred in cleaning the streets. It was placed by the finance department in the hands of the police department for that purpose, and no other; the duty of so applying it was imposed by law; and the creditors had the legal right to look to that fund for their payment, and in fact were confined to the security which it afforded them."

In case of People ex rel. Rohr v. Owens, supra, the court, by Jenks, J., said (110 App. Div. 31, 96 N. Y. Supp. 1055):

"The learned counsel for the appellant states in his printed points, 'the money which was raised for the purpose of paying said draft was diverted from its proper purpose to the payment of other drafts;' and no part of the money came into the official hands of the present treasurer. His contention is that, under such circumstances, this proceeding will not lie. As the money was raised and appropriated for a specific purpose, I think that the eye of the law still regards it as in the treasury and applicable to discharge of the draft, and that this case must be decided upon the authority of People ex rel. Darmat v. Comptroller, 77 N. Y. 45. See, too, People ex rel. Pennell v. Treanor, 15 App. Div. 508 [44 N. Y. Supp. 528]."

See, also, opinion of Attorney General of the state of New York (Reports of the Attorney General for the Year 1912, page 472), wherein it is stated that section 6 of the General Municipal Law contemplates that each bond issue shall be devoted to a specific object, and that a separation of any part of the proceeds of the sale of said bonds and

the application thereof to any other purpose would be illegal and unauthorized.

I am of the opinion that, under the foregoing authorities, the lien of the plaintiff for installing the metal work, amounting to the sum of $730, with interest, and the lien of the defendant George E. Christ for installing the plumbing and heating, amounting to the sum of $810, with interest, must be paid out of said fund, raised by authority of said second resolution according to their priority.

It is claimed by the defendant fire commissioners that the amount of the plaintiff's lien for installing the metal ceilings was paid to the contractor Heidtmann, and that therefore the plaintiff is not entitled to payment of the amount of this claim, out of such specific fund, but such alleged payment has not been established to my satisfaction by the evidence in this case, and furthermore I think that the plaintiff has a legal right to look to such specific fund for payment of his claim, under the authorities above cited. There is no claim that the payment of the plaintiff's claim has been made out of such specific fund, and, as this specific fund is still in the treasury, the plaintiff is entitled to satisfaction of its demand out of said fund. It is admitted that the treasurer has in his hands $1,994. I find, as a matter of fact, that this sum was derived from the sale of bonds raised by the district to defray the costs of the metal work, plumbing, and heating, and I hold, as a matter of law, that this sum must be applied in payment of the lien of the plaintiff for the metal work and the lien of the defendant Christ for plumbing and heating according to their priority, with interest thereon, which reckoned to June 4, 1915, amounts in the aggregate to $1,612.15. Deducting this amount from the said sum of $1,994, there is a balance of $381.85 approximately. The fund for constructing the building raised by the first resolution was $5,000. At the time that the contractor abandoned the work, the building was still unfinished. Under his contract he was entitled to $4,994, of which he did receive, at the time he abandoned the work, $4,714, leaving $280 due on the building contract.

[3] It was claimed upon the trial by the Nassau Lumber Company that the defendant Christ completed the building as surety under the indemnity bond dated May 25, 1914. The obligation of this bond is that J. E. Heidtmann will faithfully discharge and execute his duties as contractor. The court held upon the trial that J. E. Heidtmann was not the real contractor. The undisputed evidence showed that Jesse H. Heidtmann signed his brother's name to the bond without authority, and that he practically committed forgery. It appeared further that after the contract was signed, and the bond executed, the contract was materially changed in regard to payments to be made thereunder. Such change released the surety from liability. Paine v. Jones, 76 N. Y. 274. Judge Danforth in the above case, in speaking of the release of the surety from liability by reason of a change or alteration, said: "And the court will not inquire whether it is or not to his injury." Under the circumstances disclosed, there was no liability on the part of Christ upon said bond, and he was under no legal obligation to take up the work which had been abandoned by the contractor.

[4] The fire commissioners were compelled, when Heidtmann abandoned the work, to have some one else finish it, and, if they did not directly hire Christ to complete the building, they certainly permitted him to do so, and accepted the completed building from his hands. The fire commissioners had a right, under the circumstances disclosed by the evidence (having an unfinished building on their hands), to finish the work left undone by the contractor, and they had the right impliedly to obligate the district to the extent of any sum which remains in their hands over or above the amount necessary to pay for the metal work, plumbing, and heating for the payment of the material and labor that went into the building to complete it; and so it seems to me that the defendant Christ is equitably entitled to receive, on account of the amount due him for completing the building, the amount of money in the hands of the treasurer over and above the amount necessary to pay for the metal work, plumbing, and heating. Deducting the amount of the liens of the plaintiff and the defendant Christ which have been allowed, with interest, namely, $1,612.15 from the $1,994 in the hands of the treasurer, leaves a balance of $381.85, which amount is allowed to said defendant Christ on account of the sum due him for completing the building.

[5] The lien of the Nassau Lumber Company and the lien of the defendant George E. Christ for $272 cannot be enforced in this action as mechanic's liens because the contractor under whom they claim had been paid, at the time he abandoned the contract, all that he was entitled to receive up to that time. Van Cleif v. Van Vechten, 130 N. Y. 571, 29 N. E. 1017; Herrmann & Grace v. City of New York, 130 App. Div. 531, 114 N. Y. Supp. 1107, affirmed 199 N. Y. 600, 93 N. E. 376; Keavey v. De Rago, 20 Misc. Rep. 105, 45 N. Y. Supp. 77; Hedden Construction Co. v. Proctor & Gamble Co., 62 Misc. Rep. 129, 114 N. Y. Supp. 1103; Ray on Mechanic's Liens and General Contracting, pp. 329, 383, 410.

[6] The defendant Nassau Lumber Company is entitled to a personal judgment against Jesse H. Heidtmann, the contractor, for $1,349.32, the amount of this lien, with interest thereon, and the defendant George E. Christ is entitled to a personal judgment against said Heidtmann for $272, the amount of his lien for labor and material, with interest thereon.

[7] As the defendant Christ finished the building under an implied contract with the fire commissioners, and not as a subcontractor under Heidtmann, no personal judgment can be awarded in his favor against said Heidtmann for the balance due him on his lien for $1,069.40 for finishing the building, and, as the fund in the hands of the treasurer will be exhausted by the amounts allowed above (there being nothing left to which a lien attached or out of which satisfaction can be made), there can be no personal judgment against the fire district or the fire commissioners as such.

As intricate questions have arisen in the case which have affected all the parties and have rendered the action somewhat difficult, costs are awarded as follows, to be paid out of the fund of $1,994, viz.: To the plaintiff, taxable costs which will include disbursements for

publication of summons, etc., and an additional allowance of $25; and to the defendants New Hyde Park fire district, Nassau Lumber Company, and George E. Christ, each $50.

The amounts allowed to the plaintiff and the defendant Christ upon their liens will be subjected to the payment and deduction therefrom of all the costs allowed herein according to the proportion which said costs bear to the amounts awarded to them on their liens.

Proposed findings will be served by plaintiff and the defendants upon each other within five days after the filing of this memorandum, and all the proposed findings, together with the proposed decree and notice of settlement thereof, shall be submitted to the court within five days thereafter.