THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE CITY OF GENEVA, Respondent, v. THE BOARD OF SUPERVISORS OF ONTARIO COUNTY, Appellant.

1. TAX — TAX IMPOSED UPON BANK STOCK UNDER SECTION 24 OF THE TAX LAW — ASSESSED VALUE OF STOCK OF BANK LOCATED IN TAX DISTRICT MUST BE INCLUDED IN AGGREGATE AMOUNT OF TAXABLE PROPERTY OF SUCH DISTRICT FOR PURPOSE OF FIXING AMOUNT OF GENERAL TAX TO BE LEVIED ON DISTRICT. Under the provisions of the Tax Law (L. 1896, ch. 908, § 24, as amd. by L. 1901, ch. 550; L. 1902, ch. 126, and L. 1903, ch. 237), "the rate of tax upon the shares of stock of banks and banking associations shall be one percentum upon the value thereof, as ascertained and fixed in the manner hereinbefore provided," which "tax shall be in lieu of all other taxes whatsoever for state, county or local purposes upon the said shares of stock," and which tax shall be collected by the board of supervisors of the county in which the bank or association is located, and be distributed by them among the tax districts of the county, including the district in which the bank is located, according to a rate to be ascertained in a manner prescribed in the statute; but there is no provision which authorizes or justifies the omission from the aggregate assessed valuation of a tax district for the purpose of fixing the amount of state and county taxes to be paid thereby, of the assessed value of the stock of such bank, which would be inequitable; and where there are two banks within a small city, which constitutes a tax district of a county, the same as a town, the assessed value of the stock of such banks must be included in the aggregate amount of taxable property of the city for

1

the purpose of fixing the amount of taxes to be levied upon the city by the board of supervisors.

2. Tax upon Bank Stocks, Although in Lieu of All Other Taxes, Is Not Exclusively for Benefit of Tax District Wherein Bank Is Located. The tax upon bank stocks under section 24 of the Tax Law is not raised for local purposes and divided amongst the local tax districts for village or city, town or school purposes only; it is in lieu of all other taxes, expressly including state and county taxes, and there is no more reason for saying that it is exclusively raised on account of local purposes or interest than that it is raised exclusively on account of state and county purposes.

3. Tax upon Bank Stock Is Not in the Nature of a License, but a Tax upon Property. The contention that the tax imposed upon the stock of banks and banking associations under section 24 of the Tax Law is in the nature of a license for conducting the banking business and, therefore, like the license fees collected under the Liquor Tax Law, ought to be appropriated exclusively to the use and benefit of the district in which the bank is located, is untenable. The Liquor Tax Law plainly and explicitly imposes certain license fees upon the business of trafficking in liquor and provides for a distribution of the license fees thus collected. The Tax Law imposes a tax upon bank stock as property just as it does upon other species of property, and there is nothing in the nature of a license fee about it.

*People ex rel. City of Geneva* v. *Bd. of Supervisors,* 114 App. Div. 915, reversed.

(Argued January 8, 1907; decided February 26, 1907.)

Appeal from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered July 19, 1906, which affirmed an order of Special Term granting a motion for a peremptory writ of mandamus to compel the defendant to issue to the relator a new certificate relative to the assessment and apportionment of taxes in the county of Ontario.

The facts, so far as material, are stated in the opinion.

*Frank Rice* and *A. L. Gardner* for appellant. The action of the board of supervisors was in accordance with the statute law of the state. (L. 1896, ch. 908, § 3 ; *People ex rel. N. S. Bank* v. *Peck,* 157 N. Y. 51 ; *City of Rochester* v. *Coe,* 25 App. Div. 300.) The course pursued by the board of supervisors was not only legal, but it was entirely just and equitable.

1907.]   People ex rel. City of Geneva *v.* Bd. Suprs.   3

N. Y. Rep.]      Opinion of the Court, per Hiscock, J.

(*Matter of Jenkins,* 47 App. Div. 404; *City of Utica* v. *Bd. of Suprs.,* 109 App. Div. 189.)

*W. Smith O'Brien* and *A. P. Rose* for respondent.    The including of the assessed value of bank stocks, taxable under the provisions of section 24 of the Tax Law, in the taxable property of the municipality where such bank stocks are situate, for the purpose of determining the amount of state and county taxes to be apportioned to such municipality is contrary to the plain provisions of the statute and improper. (*People* v. *Gray,* 185 N. Y. 196; *People ex rel. Lawyer* v. *Supervisors,* 39 Misc. Rep. 164; *City of Utica* v. *Bd. of Suprs.,* 109 App. Div. 189.)

Hiscock, J.    The city of Geneva is made a tax district the same as a town; but a warrant for the collection of state and county taxes is not issued by the board of supervisors to one of its officials as in the case of a town. Instead of this, said board having determined the amount to be raised for such taxes, in effect certifies the same to the proper authorities of the city, and the officials of the latter then collect said amount, which is returned to the proper officials for state and county purposes.    The amount of taxes thus to be certified and raised in any year should bear the same proportion to the aggregate amount of such taxes to be raised throughout the entire county which the amount of taxable property within the city might bear to the aggregate amount of taxable property throughout the county.    In the year involved there were located within the city of Geneva two banks, of which the capital stock was assessed at upwards of $500,000.    In fixing the proportion of state and county taxes to be collected and returned by the respondent the board of supervisors included in their estimate of taxable property such assessed valuation of said bank stock, and this inclusion increased the amount to be raised for the aforesaid purposes by the sum of $1,211.31.

It is contended by the respondent and has been held by the learned courts below that on account of the special provisions

for the taxation of bank stock it was error for the board of supervisors to do as it did and that the value of said bank stock should not have been included in the amount of taxable property for the purpose of fixing the amount of taxes to be paid.

We think that this contention and such determination are erroneous.

It is undisputed, and, therefore, we need not quote or review all the statutory details upon that subject, that it was proper to place upon the assessment rolls for the city of Geneva the shares of bank stock in question and the valuation thereof assessed and determined in the manner provided by law.

It is also undisputed, and, therefore, again we may refrain from going into the details of statutes, that presumptively all of the taxable property, real and personal, in the city of Geneva should be taken into account in determining the proportion of taxes to be raised within that district. And finally, if respondent is right in its contention that the value of bank stock as spread upon its assessment rolls should be omitted and disregarded in determining the proportion and amount of state and county taxes to be raised, authority for this must be found in the statutory provisions especially relating to the taxation of such stock. We shall, therefore, refer to such of these as are regarded material.

Section 24 of the Tax Law (being chapter 24 of the General Laws) — L. 1896, ch. 908, section 24, as amended by L. 1901, ch. 550, L. 1902, ch. 126, L. 1903, ch. 267 — prescribes the method of fixing the value of stock in a bank or banking association, and then further provides: "The rate of tax upon the shares of stock of banks and banking associations shall be one per centum upon the value thereof, as ascertained and fixed in the manner hereinbefore provided. * * * The said tax shall be in lieu of all other taxes whatsoever for state, county or local purposes upon the said shares of stock." Said section then, after providing for the collection of said tax under the supervision of the board of supervisors and wholly within the county where the bank

1907.]   People ex rel. City of Geneva v. Bd. Supes.   5

N. Y. Rep.]      Opinion of the Court, per Hiscock, J.

or association is located, further enacts : " The tax hereby imposed shall be distributed in the following manner : The board of supervisors of the several counties shall ascertain the tax rate of each of the several town, city, village, school and other tax districts in their counties respectively, in which the shares of stock of banks and banking associations shall be taxable, which tax rates shall include the proportion of state and county taxes levied in such districts, respectively, for the year for which the tax is imposed, and the proportion of the tax on bank stock to which each of said districts shall be respectively entitled shall be ascertained by taking such proportion of the tax upon the shares of stock of banks and banking associations, taxable in such districts respectively, under the provisions of this act as the tax rate of such tax district shall bear to the aggregrate tax rates of all the tax districts in which said shares of stock shall be taxable." · It also provides that " In issuing their warrants to the collectors of taxes, the board of supervisors shall omit therefrom assessments of and taxes upon the shares of stock of banks and banking associations."

We do not find in these provisions or any others not specifically referred to when properly construed in connection with the general provisions for the assessment and collection of taxes for state and county purposes, anything which either explicitly or impliedly sustains the respondent's contention.   We find, it is true, a special and arbitrary percentum of taxation imposed upon all bank stock at its assessed valuation, and that this is in lieu of all other taxes upon such stock; that the ordinary tax warrant shall not be carried out against it ; also special machinery for the collection of this tax and special provision for its distribution, and certainly the city could not collect any additional taxes upon this property in direct response to the requisition of the board of supervisors.   But we do not find anywhere any provision which satisfies us that in determining as between the city of Geneva and other towns in the county the proportion of taxes to be raised by the former for general purposes of state

and county the valuation of this species of property should not be taken into account. That is an entirely different proposition. In fact, the very provisions relied upon by the respondent seem to us to lead quite conclusively to an opposite conclusion than that urged in its behalf.

The tax levied upon the bank stock is "in lieu of all other taxes whatsoever for state, county or local purposes." Thus, it is a substitute or equivalent amongst other things for the state and county taxes which otherwise might and would be collected upon it just as they are levied upon other property. The existence of taxation for those purposes is recognized and the sum collected upon the bank stock is in part impressed with the character of an equivalent therefor. This certainly does not carry the idea that such stock should be excluded from view in considering the general subject of state and county taxes, but rather that the latter should be regarded as included in the one percentum raised in accordance with law.

The tax thus collected is to be turned back to the tax districts wherein the banks are situated, and in determining the respective amounts in which it shall thus be turned back "the proportion of state and county taxes levied in such districts respectively" must expressly be taken into account. Thus we have it that of the tax collected upon the stock of banks situated within its limits in lieu of or as a substitute for or on account of state and county taxes, the respondent has received a certain amount which bears direct relation and proportion to the amount of state and county taxes collected within its district. With this relation thus expressly established between state and county taxes and the tax upon the bank stock and the amount thereof to be turned over to the respondent, it would seem strange and quite inequitable if the connection should there end and the amount of state and county taxes to be paid by the city be determined between it and other localities without any reference to, but rather upon an exclusion of the value of the bank stock. This, as it seems to us, would result in the city receiving a certain amount of taxes collected upon the stock on account of state and county taxes and then

escaping all contribution to that very fund of taxes on account of which it had received something. The city would culti- vate this particular species of taxable property as a source of local or private revenue and refuse to recognize it as a basis for any corresponding obligation common to all other tax dis- tricts and applicable to other kinds of taxable property.

It is not difficult to assume a case entirely within the bounds of reasonable probability which would illustrate the ends to which this doctrine would lead. A small town fortunate enough to have within its limits a bank with a capital stock of the assessed valuation of one million dollars, would receive the tax of $10,000 collected thereon. This would be in lieu of state and county taxes which, except for the special pro- visions of law, would otherwise be collected upon such prop- erty and be appropriated to said uses. The town would then refuse to pay any state and county taxes based upon a valua- tion of property which included such bank stock. Thus, without any counter-balancing duty or obligation of uniting with the other towns in the county in raising a general tax, which took into account the bank stock, it would have secured a sufficient amount of taxes to enable it to meet its purely local charges and expenses. In the meantime the other towns in the county not fortunate enough to have within their limits banking capital would be contributing towards the payment of state and county taxes upon an apportionment which took into account all of the property within their limits, without reduction or relief by any contribution to such taxes by the first town on account of the bank stock. This result mani- festly would not be equitable or just.

Upon the other hand, the course adopted by the defendant board of supervisors accomplishes substantial justice. It is urged that because direct state and county taxes could not be collected upon the bank stock, the inclusion of the value of such stock in the aggregate valuation of property within the city of Geneva by which to fix the amount of state and county taxes there to be raised, would result in imposing upon the other taxable property in that city an increased burden. This

is not so to any appreciable degree even in this particular case. As already stated, the inclusion of the bank stock in the taxable property of Geneva as a basis of computation increased the amount of state and county taxes by the sum of $1,211.31. It is stated without dispute that the bank tax received by it on account of the proportion of state and county taxes amounts to $981.92. After crediting this latter sum as may be done upon the amount of state and county taxes to be raised, the net increase in the amount of taxes to be raised because the bank stock had been considered would amount to only a little over $200. If, as easily might happen, the percentage of state and county taxes had been a trifle larger in proportion to the entire tax rate for the city of Geneva, then the amount of the bank tax distributed to the latter on account of state and county taxes would have been greater than the increase complained of.

It remains to consider very briefly two propositions which have been urged either by the court or by counsel in support of the contention of the respondent. It was stated by the learned trial justice as a basis for his decision that "The tax upon bank stocks under this section (Sect. 24) is raised for local purposes and divided amongst the local tax districts for village or city, town or school purposes only." What we have already said sufficiently indicates our disagreement with the suggestion that this bank tax is raised for local purposes only. It is in lieu of all other taxes expressly including state and county taxes and we see no more reason for saying that it is exclusively raised on account of local purposes or interests than that it is raised exclusively on account of state and county purposes.

Upon his part the learned counsel for the respondent attempts to escape from the conclusion that the plaintiff ought to bear some burden of state and county taxes on account of the bank stock in view of the fact that it has received part of the taxes collected thereon in lieu of such taxes, by arguing that the bank tax is in the nature of a license for conducting the banking business, and, therefore, by analogy with the fees collected under the Liquor Tax Law ought to be appropriated

exclusively to the use and benefit of the district wherein the bank is located.  Our analysis does not disclose even a shadow upon which to base any such analogy.  The Liquor Tax Law plainly and explicitly imposes certain license fees upon the business of trafficking in liquor and provides for a distribution of the license fees thus collected.  The Tax Law imposes a tax upon bank stock as property just as it does upon other species of property, and there is nothing in the nature of a license fee about it.  So that there is no opportunity for plaintiff to derive any assistance which might otherwise result from this comparison, however great or small that might be.

The orders of Appellate Division and Special Term appealed from should be reversed, with costs, and plaintiff's application for the writ of mandamus denied, with fifty dollars costs and disbursements in courts below, and with costs of this appeal.

CULLEN, Ch. J., EDWARD T. BARTLETT, HAIGHT, VANN, WERNER and WILLARD BARTLETT, JJ., concur.

Ordered accordingly.