VILLAGE OF ELMIRA HEIGHTS, Plaintiff, *v.* TOWN OF HORSEHEADS, Defendant.

Supreme Court, Chemung County, April 30, 1931.

*McDowell & McDowell* [*Asbury Harpending* of counsel], for the plaintiff.

*Bentley & Bush* [*Frederick Collin* and *Halsey Sayles* of counsel], for the defendant.

SENN, Official Referee. The facts in this case are not materially disputed.

The greater part of the village of Elmira Heights is in the town of Horseheads and both are in the county of Chemung. The franchise taxes in question were collected in the portion of the village of Elmira heights which is in the town of Horseheads.

Under article 9-A of the Tax Law a franchise tax is assessed on certain corporations doing business in the State. The amount of this tax as against each such corporation is computed and determined by the State Tax Commission, which also determines " the portion of such tax to be distributed to the several counties and the amounts to be credited to the several cities or towns thereof, when the same is collected and shall certify the same to the state comptroller." It shall also indicate the facts as to the location in villages of the property of any such corporations or the location therein of its principal financial office. (Tax Law, § 219-a). This tax is paid to the State Comptroller (Tax Law, § 219-c), of which two-thirds is paid into the State treasury and the remaining one-third is distributed and paid by him to the treasurers of the several counties of the State and disposed of by them in accordance with rules set forth in section 219-h, of which I only quote the portions directly applicable to this case.

" 4. In making such payment to a county treasurer, the state comptroller shall indicate the portion thereof to be credited to any city or town within the county on account of the location therein of its principal financial office or property as determined by the preceding subdivisions, and if such principal financial office or property is located in a village, shall indicate the village in which it is located; if such principal financial office or property is located * * * in a town outside of a village, the whole of such portion shall be paid to such * * * town * * * if such principal financial office or property is located in a village, there shall be

paid to such village * * * such a part of the entire amount credited to the town as the entire amount of taxes raised by said village, or portion thereof in said town, during the preceding calendar year for village and town purposes bears to the aggregate amount so raised by the town and village during the preceding calendar year for town and village purposes." (Amd. by Laws of 1918, chap. 417.)

For the five years 1921, 1922, 1923, 1924 and 1925, the county treasurer of Chemung county, acting on the interpretation of the statute as indicated to him by the State Comptroller, apportioned the franchise tax moneys in question as between the village of Elmira Heights and the town of Horseheads on the following basis:

He *first* ascertained the amount of taxes raised by (or in) the portion of the village located in the town of Horseheads for village purposes. *Second*, he ascertained the amount of taxes raised in the town for town purposes. For the side of the village in the proportion he took the first amount; for that of the town he took the sum of the first and second amounts. In other words, he divided the first amount by the sum of the first and second and so produced the decimal which multiplied by the amount credited to the town produced the sum which he apportioned to the village.

It is claimed on behalf of the plaintiff that this did not give to the village its proper share so that the town received considerable sums to which the village was entitled; that on the village's side of the proportion, in addition to the sum which was considered, there should have been included the sum which was raised in the part of the village located in the town of Horseheads for town purposes.

The county treasurer, being advised as stated, evidently assumed that as no taxes are raised by the village for town purposes, the words of the statute in that respect were surplusage and of no effect. In other words, he took the word " by " literally. In this I believe he was clearly in error and that the obvious meaning and intent of the statute was that the amount raised " in " the part of the village in question was to be included. There cannot be much doubt but that the Legislature intended that a large proportion of the franchise tax money originating in villages should remain there, although allowing some part of it to go to the town. It may be noted that where the corporation is in a town, but entirely outside of a village, the town gets it all.

I think it is no violence to the meaning of words to say that in the sense of the statute the words " by " and " in " may be considered as interchangeable. " By " is a word of so many meanings that too close an adherence to its commonly accepted definition,

viz., " through the medium of," could easily result in confusion and perversion of justice.

" In its primary sense the word expresses relation to place. In this sense it signifies ' at ' or ' near.' By its various, remote, and casual associations its meaning is variously modified." (9 C. J. 1109.)

Again, taking the word in the literal and accepted sense that he did, there is another difficulty. Village taxes are raised by the village as a whole and not by a part of the village, although assessed and collected in its various parts. Therefore, by *reductio ad absurdum* the treasurer might also have held that as no taxes were raised " by " the portion of the village in the town of Horseheads for village or town purposes, no part of the franchise tax should be paid to the village.

It is far more reasonable to believe that in using the word " by " the Legislature referred to taxes raised by the taxpayers and taxable property in the territory in question.

However that may be, I agree entirely with the present interpretation by the Attorney-General, which has been followed since 1925, that the words " by said village " as used in the statute should be construed to mean " in said village " and that the word " by " was inadvertently used when " in " was intended.

This is simply giving words their obvious intended meaning and is not writing something further into the statute to supply a supposed intent within the meaning of *Dewey* v. *United States* (178 U. S. 510) and other cases cited by the defendant's attorneys on that point.

The claim is seriously advanced and elaborately briefed for the defendant that plaintiff's remedy is by certiorari and not by action. There are authorities seemingly both ways but in my view this question is entirely disposed of by the opinion in *City of Buffalo* v. *County of Erie* (88 Misc. 591; affd., 171 App. Div. 973; affd., 220 N. Y. 620). In this case money which should have been paid to the city was paid to the county under an erroneous interpretation of the Tax Law in regard to taxes on bank stock. It was held that the city's remedy was not limited to certiorari to review the action of the board of assessors in apportioning the taxes, but that it was entitled to recover them in an action at law.

In the same case (*City of Buffalo* v. *County of Erie*) it was held that the city was not estopped from maintaining its action on account of having for nine years, without protest or objection, acquiesced in the apportionment of the taxes between the city and county, accepting the share apportioned to it and permitting the county to use the money so realized by it for general county charges.

Originally the plaintiff herein sought to enforce its rights by certiorari and there was a decision at Special Term that the remedy was proper. Later the proceeding was discontinued on stipulation and the certiorari order dismissed. I do not think that this amounted to an adjudication that certiorari was plaintiff's only remedy, especially in view of the fact that it clearly was not.

In *People ex rel. City of Tonawanda* v. *Fitzhenry* (170 App. Div. 227), where precisely the same relief was sought as in the *Buffalo* case, but by mandamus, it was held that the writ of mandamus should have been dismissed on the ground of laches in prosecuting the same, but it was quite plainly intimated that the city relator still had its remedy by an action at law.

I, therefore, hold that the plaintiff is entitled to the relief demanded in the complaint, except that all claims based on payments made prior to June 22, 1923 (the action having been commenced on June 22, 1929), are barred by the Statute of Limitations.

Submit findings and order to that effect.